TUCKER ELLIS & WEST LLP
EVAN C. NELSON – STATE BAR NO. 172957
LILLIAN C. MA – STATE BAR NO. 210103
135 Main Street, Suite 700
San Francisco, California 94105
Telephone: 415.617.2400
Facsimile: 415.617.2409
evan.nelson@tuckerellis.com
lillian.ma@tuckerellis.com

Attorneys for Defendant
CARRIER CORPORATION

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ROBERT SCHOELZEL,<br><br>    Plaintiff,<br><br>    v.<br><br>ASBESTOS DEFENDANTS, As Reflected on Exhibits, et al.,<br><br>    Defendants. | Case No.  C 08-03113 JSW<br><br>**DEFENDANT CARRIER CORPORATION'S OPPOSITION TO PLAINTIFF'S MOTION TO REMAND, TO STRIKE DECLARATIONS, AND FOR FEES AND COSTS**<br><br>Date: November 7, 2008<br>Time: 9:00 a.m.<br>Courtroom: 2, 17th Floor |

1
CARRIER CORPORATION'S OPPOSITION TO
MOTION TO REMAND

SFOiManage/011425/001621/160040/1

## I. INTRODUCTION

The United States government contracted with Carrier Corporation ("Carrier") to purchase large military air conditioning and refrigeration equipment designed and manufactured specifically for United States ships pursuant to military specifications. The military specified precisely the type of refrigeration and air conditioning equipment it wanted, directly oversaw all aspects of the development and testing, and ultimately approved compliance with such specifications before placing the air conditioning and refrigeration plants into service aboard military ships.

Plaintiff Robert Schoelzel ("Plaintiff") claims that he was exposed to asbestos over a period of twelve years from different products manufactured and distributed by many different companies. As to Carrier, Plaintiff alleges that he was exposed to asbestos from Carrier air conditioning equipment, which included compressors, for the United States Navy to utilize aboard its naval vessels.

Until June 3, 2008, Plaintiff alleges that he was exposed to Carrier residential equipment stemming from his work for Ames Plumbing, Heating and Air Conditioning. To this date, there was nothing to trigger federal officer removal jurisdiction. On June 3, 2008, Plaintiff served discovery responses claiming asbestos exposure from work on Carrier military air conditioning equipment, including compressors. Within 30 days, Carrier properly and timely removed this matter pursuant to the Court's federal officer jurisdiction under 28 U.S.C. Sec. 1442.

An entity may remove a case under Section 1442(a)(1) by showing that: (1) it acted under the direction of a federal officer or agency; (2) it has a colorable federal defense; and (3) there exists a causal nexus between plaintiff's claim and the acts performed under color of federal office. *See Mesa v. California,* 489 U.S. 121, 124-25, 129-31, 134-35 (1989); *Machnik v. Buffalo Pumps, Inc.*, 506 F.Supp.2d 99, 102 (D.Conn. 2007). Here, the United States military exercised direct and detailed control over the process by which Carrier designed and manufactured the air conditioning and refrigeration plants that Plaintiff claims as a cause of his disease. Furthermore, Carrier's actions in designing such engines are under the direct and

1
CARRIER CORPORATION'S OPPOSITION TO
MOTION TO REMAND

detailed control of the United States military raise a colorable government contractor defense.

The United States Supreme Court and the Ninth Circuit Court of Appeals "mandate[] a generous interpretation of the federal officer removal jurisdiction." *Durham v. Lockheed Martin Corp.,* 445 F.3d 1247, 1252 (9th Cir. 2006). The Ninth Circuit recently emphasized "a clear command from both Congress and the Supreme Court that when federal officers and their agents are seeking a federal forum, we are to interpret section 1442 broadly in favor of removal." *Id.* "The policy favoring [federal officer] removal should not be frustrated by a narrow, grudging interpretation of Section 1442(a)(1)." *Id. Quoting Arizona v. Maypenny* 451 U.S. 232, 242 (1981). This case is properly before the Federal District for the Northern District of California, and this Court should deny Plaintiff's motion to remand.

## II. STATEMENT OF FACTS

On or about June 30, 2006, Plaintiff Robert Schoelzel filed a Complaint in this action, bearing Case No. CGC-06-453669, against at least forty-six distinct defendants in the Superior Court of the State of California for the County of San Francisco for his alleged asbestos-related injuries. (Compl.)[1] Plaintiff specifies he worked for various employers in multiple states including non-military employers and the Department of Defense. (Compl. Exh. A.) The Complaint did not specify what, if any, products designed, manufactured, or distributed by Carrier were alleged to have contributed to Plaintiff's alleged injuries. (Compl. Exh. A.) None of the pleadings or other documents received by Carrier at the time of service, including Plaintiff's discovery responses served prior to Carrier's appearance, reflected any specific allegations regarding Carrier or any of its alleged products. (Compl. Exhs A-C.) None of these documents gave Carrier any indication that Plaintiff's claims against Carrier included Carrier's military equipment. (Compl. Exhs A-C.)

In April 2007, Defendants took Plaintiff's deposition in this matter in which he only alleged exposure to asbestos from working with Carrier residential and light commercial air

---

[1] A copy of all state court papers served on Carrier including Plaintiff's Complaint and Amendment thereto in this action were previously filed with this Court in Carrier's Notice of Removal under Exhibit A.

conditioning units while employed as a civilian plumber's apprentice at Ames Plumbing, Heating and Air Conditioning in 1972 in Orange County, California. (Deposition of R. Schoetzel, April 2, 2007, v.I 46:13-49:9, attached hereto as Exhibit 1.)

On March 5, 2008, Plaintiff filed an Amendment to Complaint naming defendant Carrier for the first time as DOE number 9. (March 5, 2008 Am. to Compl..)

On June 3, 2008, Plaintiff served responses to Carrier's special interrogatories. (Pl.'s Resp. to Spec. Interrog. No. 1 at 2-3.)[2] For the first time in this action, Plaintiff specifically alleged occupational exposure from military equipment Carrier made for the U.S. Navy. (Pl.'s Resp. to Spec. Interrog. No. 1 at 2-3.) Specifically, Plaintiff claims he was exposed to asbestos from his work on Carrier's military air conditioning plants, including compressors, used aboard the USS Waddell (DDG-24) and USS Truxton (CGN-35). (Pl.'s Resp. to Form Interrog. No. 17.1 at 2-3; Pl.'s Resp. to Spec. Interrog. No. 1 at 2.) This is first and only time Plaintiff identifies working on Carrier military equipment. (Pl.'s Resp. to Spec. Interrog. No. 1 at 2-3.)

Within 30 days of service of Plaintiff's response to Carrier's special interrogatories, Carrier properly and timely removed this action pursuant to the Court's federal officer jurisdiction under 28 U.S.C. Sec. 1442. (Not. of Removal.)

The United States Department of Defense including the military branch of the United States Navy and its officers (collectively "Navy") developed detailed, precise specifications for military equipment. [Declaration of Roger B. Horne, Jr. ("Horne Decl.") ¶¶5-12[3]; August 4, 2008 Declaration of Thomas F. McCaffery ("McCaffery Decl.")[4] ¶¶8-9, Exh. A.] The specifications, called "MilSpecs", set forth precise requirements for equipment to be used by the Navy. (Horne Decl. ¶¶9, 11; McCaffery Decl. ¶¶10-13.) The Navy contracted with private

---

[2] True and correct copies of Carrier's form interrogatories and special interrogatories as well as Plaintiff's responses thereto were previously filed as Exhibit C with Carrier's Notice of Removal.

[3] The Horne Decl. was filed with Carrier's Notice of Removal and is incorporated by reference and relied upon herein.

[4] Carrier filed a Declaration by Thomas F. McCaffery with its Notice of Removal. Carrier incorporates by reference and relies upon that Declaration herein. However, for the Court's consideration, Carrier files concurrently herewith an August 4, 2008 Declaration by Thomas F. McCaffery attaching military specifications thereto as Exhibit A.

1  suppliers and manufacturers including Carrier to manufacture air conditioning and refrigeration
2  equipment according to these military specifications. (Horne Decl. ¶¶5-13, 17; McCaffery Decl.
3  ¶¶6-13.) The Navy generated and approved these specifications including any that required the
4  use of any asbestos-containing components. (Horne Decl. ¶¶6, 10-11; McCaffery Decl. ¶¶10-12
5  .) The Navy further controlled its training programs including what manuals and other
6  instructions were provided and/or affixed to such equipment. (Horne Decl. ¶¶13-15; McCaffrey
7  Decl. ¶9.) The specifications went so far as to authorize or prohibit specific warning labels to be
8  applied to the equipment sought by the military. (Horne Decl. ¶¶13-16.) The Navy required
9  specifications for individualized equipment including military air conditioning and refrigeration
10 equipment be sent to government contractors such as Carrier. (Horne Decl. ¶¶6-12; McCaffery
11 Decl. ¶¶8-9, Exh. A.)

12       The Navy required strict compliance with these specifications including any requiring
13 asbestos containing parts. (Horne Decl. ¶¶6-13, 17; McCaffery Decl. ¶¶10-13.) The Navy
14 regularly inspected and tested equipment including Carrier equipment to ensure it met these
15 military standards. (Horne Decl. ¶¶5-9, 17; McCaffery Decl. ¶¶10-13.) The Navy officers-
16 inspectors had multiple levels of detailed inspection and approval over the process to assure
17 compliance of Carrier equipment with the detailed Navy specifications. (Horne Decl. ¶¶5-9, 17;
18 McCaffery Decl. ¶¶9-13.) Any units that failed mandated testing and/or did not comply with the
19 military specifications were rejected. (Horne Decl. ¶¶5-9, 17; McCaffery Decl. ¶10.) The
20 equipment Carrier manufactured for the Navy which was used on navy vessels passed these tests
21 and complied with specifications. (Horne Decl. ¶¶5-6, 9, 17; McCaffery Decl. ¶10.)

22       Having received Plaintiff's responses to Carrier's special interrogatories wherein Plaintiff
23 identifies working on Carrier military air conditioning equipment, Carrier promptly removed this
24 action to federal court based on 28 U.S.C. Sec. 1442.

### III. ARGUMENT

**A. CARRIER TIMELY REMOVED THIS ACTION TO FEDERAL COURT**

27       The time for removal is governed by 28 U.S.C. Sec. 1446(b), which provides two
28 separate and independent thirty-day windows during which a case may be removed. The first

thirty-day window is triggered when a defendant receives an "initial pleading" that unambiguously reveals a basis for removal. If the initial pleading does not reveal a basis for removal, or is ambiguous, the case is "not removable" at that stage. The thirty-day removal window is tolled until defendant receives a copy of a "paper" from which "the information supporting removal is <u>unequivocally clear and certain</u>.'" *Mattel*, 441 F.Supp.2d at 1089-1090 (emphasis added); *see also Durham*, 445 F.3d at 1250. Only then is the second thirty-day window triggered. *Id.*

When removal is based on federal officer jurisdiction under Section 1442(a), the thirty-day clock for removal does not start until the plaintiff provides facts from which the defendant can ascertain that (1) there is a causal nexus between defendant's actions, taken pursuant to a federal officer's directions, and plaintiff's claims; and (2) the defendant can assert a "colorable federal defense." *Durham*, 445 F.3d at 1251. When the "colorable federal defense" is based on the government contractor defense, the thirty-day window does not commence until the defendant receives sufficient information to discern whether its allegedly wrongful conduct is protected by this defense. *Id.*

In our case, Plaintiff contends that Carrier's removal is untimely because Carrier should have speculated that it was being sued for military equipment because "[a]t virtually all times," Plaintiff was employed by the U.S. Department of Defense, even though Plaintiff admits in a footnote that there was also a non-military jobsite where potential asbestos exposure could have taken place. (Plaintiff's Motion to Remand, p. 1:11-12 and p. 2:24-27.) Plaintiff essentially concedes that there was no specific Carrier equipment identified in any of the pleadings or discovery served prior to the June 3, 2008 special interrogatory responses. Nowhere in the Complaint, the discovery responses served in the nearly two years before Carrier was ever served with the Complaint, or in Plaintiff's deposition transcripts taken in April 2007, was there ever any identification of Carrier military equipment in order to trigger a colorable federal defense. It was not until June 3, 2008, when Plaintiff served his responses to special interrogatories propounded by Carrier, did Plaintiff reveal that he was pursuing Carrier for the military air conditioning equipment it made for the U.S. Navy used aboard the USS Waddell (DDG-24) and

USS Truxton (CGN-35).  The Ninth Circuit has held that "notice of removability under § 1446(b) is determined through examination of the four corners of the applicable pleadings, not through subjective knowledge or a duty to make further inquiry" by a defendant.  *Harris v. Bankers Life and Cas. Co*., 425 F.3d 689, 694 (9th. Cir. 2005).

The *Durham* case demonstrates the fallacy of Plaintiff's "untimely removal" argument.  In *Durham*, the plaintiff sued Lockheed Martin for alleged asbestos exposure during his 30-year service in the United States Air Force as an electronics technician.  *Durham*, 445 F.3d at 1249.  The plaintiff's complaint "listed the Air Force facilities where he worked, but didn't allege which Lockheed products exposed him to asbestos."  *Id.*  The *Durham* plaintiff subsequently served discovery responses identifying the specific Lockheed aircraft on which he worked during his Air Force career.  *Id.*  Lockheed thereafter removed the action to federal court based on federal officer jurisdiction, but did so more than thirty days after service of the complaint.  *Id.*

In reversing the District Court's award of costs and fees to the plaintiff, the *Durham* court held that the thirty-day removal window for federal officer jurisdiction was not triggered "until Durham revealed which [Lockheed] aircraft he had worked on during his Air Force career."  *Id.* at 1251.  Absent such information, "Lockheed couldn't assert either its actions were taken pursuant to a federal officer's directions, or that it had a colorable defense."  *Id.*  In so holding, the Court noted that, "the contours of the plaintiff's claims frequently don't emerge until months or even years after the filing of the original complaint," thereby necessitating a liberal interpretation of removal deadlines in the context of federal officer removal jurisdiction.  *Id.* at 1253.

Here, as in *Durham*,  the removability of Plaintiff's claim against Carrier under federal officer jurisdiction was not "unequivocally clear and certain" until Plaintiff served his responses to Carrier's special interrogatories on June 3, 2008, identifying Carrier military air conditioning plants on the USS Waddell and USS Truxton.  Such information enabled Carrier, for the first time, to establish a causal nexus between the military equipment Plaintiff worked on and a military air conditioning plant manufactured and designed by Carrier under color of federal office.

1    As the *Durham* court noted, for Carrier to remove this action to federal court knowing
2 there was no causal nexus between Plaintiff's work on these ships and Carrier's actions taken
3 under color of federal office, could have subjected Carrier to Rule 11 sanctions. *Durham*, 445
4 F.3d at 1251. Plaintiff's advocacy of premature removal is directly contrary to the *Durham*
5 court's mandate that "we no longer require defendants to take this blind leap—we don't charge
6 defendants with notice of removability until they've received a paper that gives them enough
7 information to remove." *Id.* at 1251. Carrier received such information from Plaintiff's
8 responses to Carrier's special interrogatories served on June 3, 2008 and timely filed its Notice
9 of Removal on June 27, 2008.

**B.  CARRIER HAS ESTABLISHED FEDERAL OFFICER REMOVAL JURISDICTION**

Federal officer removal jurisdiction exists under section 1442 when the party seeking removal can "(1) demonstrate that it acted under the direction of a federal officer, (2) raise a federal defense to plaintiff's claims, and (3) demonstrate a causal nexus between plaintiff's claims and acts it performed under color of federal office." *See Mesa v. California,* 489 U.S. 121, 124-25, 129-31, 134-35 (1989); *see also Durham*, 445 F.3d at 1252 *citing Jefferson v. Acker*, 527 U.S. 423, 431 (1999); *Machnik v. Buffalo Pumps, Inc.*, 506 F.Supp.2d 99, 102 (D.Conn. 2007). Carrier meets each element required to establish federal officer removal jurisdiction in this case[5].

### 1.  Carrier Acted Under The Direction Of A Federal Officer In Designing And Manufacturing Carrier Air Conditioning and Refrigeration Equipment

The "acting under" element for federal officer removal is satisfied where a government contractor manufactures products under the authority of a federal officer or agency that wields direct and detailed control over the products' manufacture. *Fung*, 816 F.Supp. at 572.

In this case, the federal government was actively involved in the design and manufacture of the Carrier air conditioning and refrigeration plants used by the United States Navy on board

---

[5] Plaintiff's Motion rightly does not contest that Carrier is a "person" within the meaning of 28 U.S.C. Sec. 1442(a). *See e.g., Fung v. Abex Corp.* 816 F.Supp. 569, 572 (N.D. Cal. 1992) (corporate entities qualify as "persons" under Sec. 1442(a).

1  its naval vessels.  The Declarations of Admiral Roger B. Horne, Jr. and Thomas F. McCaffery
2  establish the detailed and direct control the United States government had over the design,
3  manufacture and approval of these large air conditioning and refrigeration plants used aboard
4  naval vessels.  Admiral Roger Horne was the Rear Admiral, a two-star Admiral, of the United
5  States Navy during the time Plaintiff worked on these naval vessels.  He has direct knowledge
6  regarding plans, specifications, and requirements that governed air conditioning and refrigeration
7  suppliers like Carrier.  Thomas McCaffery is a Commander in the United States Navy and
8  researcher who has extensive knowledge and expertise in the area of United States Navy ship
9  design, development, maintenance, construction and repair, including the mandatory nature of
10 compliance with military specifications and the level of control and supervision exercised by the
11 United States Navy over all equipment, including Carrier air conditioning and refrigeration
12 plants, that went aboard a naval vessel.
13         As explained by Admiral Horne and Commander McCaffery, the federal government
14 exercised its supervision and control through precise specifications exclusively prepared, drafted
15 and issued by the United States government through NAVSEA and/or BUSHIP.  (Horne Decl.
16 ¶¶5-6, 11; McCaffery Decl. ¶8, Exh. A.)  The military specifications address all aspects of
17 material requirement, including the use of asbestos.  (Horne Decl.¶11, McCaffery Decl., ¶¶10-
18 12, Exh. A.)  To the extent that any piece of naval equipment built and supplied by Carrier
19 contained asbestos, it would have been specifically required and approved by the Navy.
20 (McCaffery Decl. ¶¶10-11.)  Any material, feature or component used in conjunction with
21 equipment built and supplied by Carrier for use on a naval ship was specifically reviewed and
22 approved by the Navy.  (Ibid.)  Furthermore, any change to the specifications was controlled by
23 the Navy.  (Horne Decl. ¶11.)  In fact, the Navy frequently required changes in design, materials
24 and documentation before approving the design and authorizing the manufacture of the
25 equipment. (McCaffery Decl. ¶9.)   Specifically, Carrier air conditioning and refrigeration plants
26 for use on United States naval ships strictly complied with precise specifications, including MIL-
27 R-16743, and its predecessor MIL-R-2144.  (McCaffery Decl. ¶8, Exh. A.)  There are more than
28 thirty Military Specifications, Standards, Drawings and other standards incorporated into MIL-R-

16743.  (McCaffery Decl. ¶8.)  Any and all work performed on air conditioning and refrigeration equipment built and supplied for Navy ships by Carrier was performed in accordance with these specifications and requirements specified by the Navy, and that work was reviewed, inspected, tested and approved by Navy personnel before use on military ships.  (Horne Decl. ¶5.)

Moreover, United States Naval Machinery Inspectors were stationed on-site at manufacturing facilities to personally oversee each phase of the manufacturing process and to enforce compliance with the Navy design specifications.  (Horne Decl. ¶8; McCaffery Decl. ¶10.)  The Navy had direct and detailed control over every aspect of the design and manufacture of the air conditioning and refrigeration equipment, and it did not permit any deviations from its specifications.  In fact, if any material, feature or component of the equipment failed to comply with the applicable military specifications, it would have been rejected.  (McCaffery Decl. ¶10.)  Virtually no aspect of the design and manufacture of the air conditioning and refrigeration equipment escaped the close supervision and control of the U.S. Navy and its officers.  (McCaffery Decl. ¶13.)

The Horne and McCaffery Declarations thus establishes that the United States military exercised "direct and detailed control" over the design and manufacture of the air conditioning and refrigeration plants used aboard naval vessels.  As such, Carrier was acting under the direction of federal officers when it designed and produced the air conditioning equipment with which Plaintiff worked.

**2.     Carrier Raises A Colorable Federal Defense – Government Contractor Defense**

The law does not require the officer virtually to "win his case before he can have it removed." *Jefferson County, Alabama v. Acker*, 527 U.S. 423, 431 (1999) *quoting Willingham v. Morgan*, 395 U.S. 402, 409 (1969).  Explaining why courts must reject a "narrow, grudging interpretation" of the colorable federal defense standard, the United States Supreme Court reasoned that "one of the most important reasons for removal is to have the validity of the defense of official immunity tried in federal court." *Jefferson*, 527 U.S. at 431 (emphasis added.)

9
CARRIER CORPORATION'S OPPOSITION TO
MOTION TO REMAND

SFOiManage/011425/001621/160040/1

1   Thus, "[t]he question is not whether defendants' claimed defense is meritorious, but only

2   whether a colorable claim to such a defense has been made." *Fung*, 816 F.Supp. at 573. To

3   satisfy the colorability standard, a federal defense need only be "plausible" and not completely

4   frivolous. *U.S. v. Todd*, 245 F.3d 691, 693 (8th Cir. 2001) ("For defense to be considered

5   colorable, it need only be plausible; Sec. 1442(a)(1) does not require a court to hold that a

6   defense will be successful before removal is appropriate"); *Magnin v. Teledyne Cont'l Motors*,

7   91 F.3d 1424, 1427 (11th Cir. 1996) ("Defense need only be plausible; its ultimate validity is not

8   to be determined at the time of removal."). Indeed, as the Supreme Court explained in

9   articulating the government contractor defense, "whether the facts establish the conditions for the

10  defense is a question for the jury." *Boyle v. United Technologies Corp.*, 487 U.S. 500, 514

11  (1988).

12       To establish the government contractor defense, Carrier must show that (1) the United

13  States approved reasonably precise specifications; (2) the equipment conformed to those

14  specifications; and (3) the supplier warned the United States about the dangers in the use of

15  asbestos that were known to the supplier, but not to the United States." *Boyle*, 487 U.S. at 512.

16  Carrier satisfies these elements.

17       The <u>first element</u> of the government contractor defense is satisfied where the defendant

18  demonstrates that the government "set or approved reasonably detailed specifications." *McKay*

19  *v. Rockwell Int'l Corp.*, 704 F.2d 444, 453 (9th Cir. 1983). The military specifications governing

20  air conditioning and refrigeration plants, MIL-R-16743 and the more than 30 other

21  specifications, drawings and standards, were drafted, approved and provided by the United States

22  Navy to Carrier. The sworn statements of Admiral Horne and Commander McCaffery leave no

23  question the Navy required Carrier to build the equipment at issue in this case to detailed military

24  specifications. (Horne Decl. ¶¶5-13, 17; McCaffery Decl. ¶¶6-13, Exh. A.) The Navy approved

25  these specifications for air conditioning and refrigeration equipment for naval vessels calling for

26  asbestos-containing components. (Horne Decl. ¶¶6, 10-11; McCaffery Decl. ¶¶10-12 .) These

27  specifications were approved by the United States government to apply to the manufacture and

28  supply of Carrier's air conditioning and refrigeration units to the Navy. (Horne Decl. ¶¶5-13, 17;

McCaffery Decl. ¶¶6-13.) Despite Plaintiff's claims, Carrier's manufacture of these units per Navy specifications has no connection to commercial units. This military equipment for naval vessels is precisely the type of Carrier military equipment Plaintiff bases his claims on in this matter. (Pl.'s Resp. to Form Interrog. No. 17.1 at 2-3; Pl.'s Resp. to Admis. Nos. 1-17; Pl.'s Resp. to Spec. Interrog. No. 1 at 2-3.) The United States government mandated specifications for manufacture of Carrier's air conditioning and refrigeration units found on naval vessels encountered by Plaintiff.

The second element of the government contractor defense is satisfied so long as the product conformed to the Military's specifications. "Acceptance and use of an item following its production can establish that the item conformed to its specifications." *Miller v. Diamond Shamrock Co.*, 275 F.3d 414, 420 (5th Cir. 2001). In our case, Admiral Horne and Commander McCaffery both attested to the fact that the equipment was used aboard vessels meant that the equipment passed all tests and complied with all specifications. (Horne Decl. ¶¶5-6, 9, 17; McCaffery Decl. ¶10.) Carrier's air conditioning and refrigeration equipment aboard these naval vessels conformed to the detailed military specifications.

Finally, because the Navy knew of health hazards associated with asbestos, the third prong of the *Boyle* test does not apply to Carrier's government contractor defense in this case. The Ninth Circuit opined that a military equipment supplier (1) has no duty to warn the Navy about risks already appreciated by the Navy, and (2) owes no duty to directly warn plaintiff-users of the military equipment. *McKay v. Rockwell International Corp.,* 704 F.2d 444, 454-455 (9th Cir. 1983), cert. denied 464 U.S. 1043. Where the government was already aware of any dangers in the use of equipment, there is no requirement to satisfy the third prong of the *Boyle* test that "the supplier warned the United States about any dangers in the use of the equipment that were known to the supplier but not to the United States". *Boyle*, 487 U.S. 500 at 512 (1988); *Ramey v. Martin-Baker Aircraft*, 874 F.2d 946, 951 at fn.10 (4th Cir. 1989)("Because we conclude the Navy was already aware of the risk at issue, we need not consider whether [the manufacturer] would otherwise have been required to warn the Navy directly of the risk in order to assert successfully a military contractor defense"); *Shuman v. United States*, 765 F.2d 283, 285-286

(1st Cir. 1989); *Sundstrom v. McDonnell Douglas Corp.*, 816 F.Supp. 587, 589-590, 595-596 (N.D. Cal. 1993).

This case represents exactly "the kind of interference with discretionary acts that McKay and Boyle intended to prevent." *Sundstrom*, 816 F.Supp. at 596. The United States Navy was well aware of any health hazards related to the use of asbestos-related products dating back to the 1930's. (Horne Decl. ¶¶14-16; McCaffery Decl. ¶14.) The Navy's mandate to use specific parts in specifications constitutes a judgment they were safe and obviated any requirement for Carrier to warn the Navy about a danger of which they were already aware. Although the third prong government contract defense does not require Carrier to show the Navy actually precluded asbestos warnings, the Navy would have rejected such warnings. (Horne Decl. ¶¶13-15; McCaffrey Decl. ¶9.) The Navy further controlled its training programs and did not permit outside warnings by manufacturers of military products to be affixed to such equipment. (Horne Decl. ¶¶13-15; McCaffrey Decl. ¶9.) Because Carrier can establish the Navy was aware of any potential health-hazards relating to the use of asbestos containing materials, Carrier will be able to establish the government contractor defense and there are no grounds to remand this case to state court. Likewise, there are no grounds to strike the declaration of Admiral Horne and Mr. McCaffrey.

**3.     The Requisite Causal Nexus Exists Between Carrier's Acts Under The Direction Of The Military And Plaintiff's Claims**

The final element for federal officer removal jurisdiction is a causal nexus between Carrier's actions taken pursuant to a federal officer's directions and Plaintiff's claims. In cases alleging injuries caused by defectively designed military equipment, as is the case here, the requisite "causal nexus" for federal officer removal exists where the defendant can demonstrate the requisite "direct and detailed control" over the defendant's design of the product at issue. *Boyle,* 487 U.S. at 512.

As discussed, the United States military exercised extensive supervision and control over the design and manufacture of the Carrier air conditioning and refrigeration plants aboard naval vessels. Accordingly, a causal nexus exists between Plaintiff's claims and Carrier's actions

12

taken under color of federal office, thereby satisfying the final element of federal officer removal jurisdiction.

### IV. CONCLUSION

For the foregoing reasons, Plaintiff's Motion to Remand (including his request for fees and costs) should be denied.

DATED:  August 6, 2008                               TUCKER ELLIS & WEST LLP


By:  */S/*  
     Evan C. Nelson  
     Lillian C. Ma  
     Attorneys for Defendant  
     CARRIER CORPORATION

TABLE OF CONTENTS

I. INTRODUCTION ..............................................................................................................1

II. STATEMENT OF FACTS ................................................................................................2

III. ARGUMENT .....................................................................................................................4

    A.    CARRIER TIMELY REMOVED THIS ACTION TO FEDERAL COURT ..................................................................................................................4

    B.    CARRIER HAS ESTABLISHED FEDERAL OFFICER REMOVAL JURISDICTION ......................................................................................7

        1.    Carrier Acted Under The Direction Of A Federal Officer In Designing And Manufacturing Carrier Air Conditioning and Refrigeration Equipment .........................................7

        2.    Carrier Raises A Colorable Federal Defense – Government Contractor Defense...........................................................9

        3.    The Requisite Causal Nexus Exists Between Carrier's Acts Under The Direction Of The Military And Plaintiff's Claims ............................................................................................12

IV. CONCLUSION................................................................................................................13

# TABLE OF AUTHORITIES

**Cases**

*Boyle v. United Technologies Corp.*, 487 U.S. 500, 514 (1988) ................................................... 10

*Durham v. Lockheed Martin Corp.,* 445 F.3d 1247, 1252 (9th Cir. 2006) ...................................... 2

*Harris v. Bankers Life and Cas. Co.*, 425 F.3d 689, 694 (9th. Cir. 2005) ....................................... 6

*Jefferson County, Alabama v. Acker*, 527 U.S. 423, 431 (1999) ................................................. 7, 9

*Machnik v. Buffalo Pumps, Inc.*, 506 F.Supp.2d 99, 102 (D.Conn. 2007) .................................. 1, 7

*Magnin v. Teledyne Cont'l Motors*, 91 F.3d 1424, 1427 (11th Cir. 1996) ..................................... 10

*McKay v. Rockwell Int'l Corp.*, 704 F.2d 444, 453 (9th Cir. 1983 ........................................... 10, 11

*Mesa v. California,* 489 U.S. 121, 124-25, 129-31, 134-35 (1989) ............................................ 1, 7

*Miller v. Diamond Shamrock Co.*, 275 F.3d 414, 420 (5th Cir. 2001) ........................................... 11

*Quoting Arizona v. Maypenny* 451 U.S. 232, 242 (1981) ............................................................... 2

*Ramey v. Martin-Baker Aircraft*, 874 F.2d 946, 951 at fn.10 (4th Cir. 1989) .............................. 11

*Shuman v. United States*, 765 F.2d 283, 285-286 (1st Cir. 1989) ................................................. 12

*Sundstrom v. McDonnell Douglas Corp.*, 816 F.Supp. 587, 589-590, 595-596 (N.D. Cal. 1993)12

*U.S. v. Todd*, 245 F.3d 691, 693 (8th Cir. 2001) .......................................................................... 10

*Willingham v. Morgan*, 395 U.S. 402, 409 (1969) ......................................................................... 9